DWIGHT F. FAULKNER *vs.* GEORGE H. HILL & another.

Partners, after pledging goods, with an invoice, as collateral security for a debt owed by them and payable on demand, dissolved the partnership, and, in consideration of the agreement of J. S. to pay its debts, conveyed to him all the property of the firm, made him their attorney to demand and receive all its effects and execute releases therefor as fully as they might do, and covenanted not to receive or release any demands of the firm or interfere with its affairs without his consent. The pledgee had notice of this contract, but never agreed to substitute J. S. as his debtor. J. S. then paid to him part of the debt, and took from him, with his consent, what, so far as he knew or as was shown by the invoice, was a proportional part in value of the pledged goods, though in fact it was a much more valuable portion. Subsequently (J. S. having died insolvent) he made demand on the pledgors for the balance of the debt, and then caused the rest of the goods to be sold by auction, bid them in himself, and rendered to the pledgors an account of the sale. *Held,* that, in respect to the goods delivered by him to J. S., he was not liable to account to the pledgors for any greater sum than J. S. paid to him. *Held, further*, that he was not entitled to disaffirm the sale of the rest of the goods and return them to the pledgors without their consent; but that he could recover from the pledgors only the balance of the debt after deducting the proceeds of the sale.

CONTRACT to recover a balance alleged to be due from the defendants to the plaintiff on an account annexed for "money advanced on paper collars;" submitted to the judgment of the court on a statement of facts agreed substantially as follows:

On May 8, 1866, the defendants, who were partners under the firm of Hill Brothers & Company, borrowed of the plaintiff $2000, payable on demand with interest, and as collateral security for repayment delivered to him twenty cases, containing 148,060 paper collars, (then worth $2886.12,) with an invoice specifying the number but not the sizes of the collars in each case.

On June 1, 1866, the defendants dissolved their partnership and entered into an agreement in writing with George B. Lamb their former clerk, by which they sold and assigned to him all

their "right, title and interest of and in said copartnership, and all goods, wares, merchandise, moneys and effects thereto belonging;" and "the better to enable said Lamb to receive all said partnership effects for his own use and benefit," made him their attorney "to ask, demand, sue for, recover and receive of and from all and every person or persons whatsoever all the debts, goods, chattels and effects now due and owing or belonging to said copartnership, and upon the receipt of the same to sign and execute proper and sufficient releases and discharges for the same," as fully and effectually as they might do if personally present; and agreed "not at any time hereafter to receive, release, acquit or discharge any of the debts or demands due to said copartnership, or interfere or presume in any manner to exercise any control of the affairs thereof, without the consent of said Lamb;" and by which Lamb agreed "within thirty days from the date hereof to pay and discharge all debts and demands due and owing from said copartners on account of said copartnership, or which either of them shall or may be liable to pay or make good on account thereof, and to save them harmless and indemnify them and each of them from and against all costs and payments, charges and demands whatsoever, on account of said copartnership or any matter or thing relating thereto, and if he shall fail to pay and discharge all debts due from said copartnership within said thirty days, then it shall be lawful for said copartners to take possession of the effects of said copartnership, and pay and discharge the debts then due and unpaid, returning the balance remaining after such payment to said Lamb for his own use and benefit."

On July 11, 1866, the plaintiff had notice of the dissolution of the partnership, and of this agreement between the defendants and Lamb. The debt owing to him from the partnership was one of its liabilities, and the twenty cases of collars in the plaintiff's hands were a part of its assets at the time of the dissolution.

"Between July 11, 1866, and December 24, 1866, the plaintiff, without giving any notice to the defendants, at the request of said Lamb, delivered to him nine of said cases, containing

in all 58,310 collars, and received from him at the several times of delivery substantially such a proportion of the debt as the number of collars taken bore to the whole number contained in said invoice. Lamb knew the contents of the several cases, and selected such cases as he chose out of the invoice. The plaintiff had no personal knowledge of the sizes of collars contained in the cases, or that the sizes varied; nor had he ever made any inquiry of the defendants in relation to the matter; and he permitted Lamb to make such selection, in ignorance that the remaining cases were rendered less valuable thereby. The nine cases selected by Lamb were the most valuable, and the remaining eleven cases, for a sale not in connection with the other sizes, were reduced in value upwards of thirty per cent. by the delivery of the nine cases, the assortment being thereby rendered less valuable.

" On April 2, 1867, Lamb died insolvent. Up to that time the plaintiff never notified the defendants that their debt to him was not paid, and never made any demand upon them for its payment; nor had the defendants ever inquired of the plaintiff whether the debt had been paid. After the death of Lamb, and in April 1867, the plaintiff demanded payment of the balance of this debt from the defendants, and offered to return said eleven cases of collars."

" In June 1867, after giving notice to the defendants, the plaintiff offered said eleven cases of collars for sale at public auction, but, no one appearing to purchase, he bid them in himself and rendered an account of said sale to the defendants, and claimed the balance remaining after such credit as in said account of sales set forth, but gave no notice to the defendants of the fact of his having bid in said collars himself, nor had they ever any notice of this fact till several months after the answer was filed in this suit. The plaintiff now has said eleven cases of collars in his possession, and is ready to surrender the same to the defendants upon the payment of his claim; but the defendants seek to confirm the sale and to hold the plaintiff to the account of this sale as originally rendered." A copy of the account of the sale was made part of the statement of facts.

If, upon these facts, the plaintiff was entitled to recover, judgment was to be entered for the plaintiff for such sum as the court should direct; otherwise, judgment to be entered for the defendants.

*J. P. Converse & D. P. Kimball*, for the plaintiff.

*G. O. Shattuck & W. H. Towne*, for the defendants.

GRAY, J. This is a very plain case. The defendants, after pledging goods to the plaintiff as collateral security for a debt, made an arrangement with Lamb, their former clerk, by which, in consideration of his agreement to pay and discharge all their debts, (including, of course, that to the plaintiff,) they conveyed to him all their partnership property, (including the goods pledged,) and, the better to enable him to receive the same for his own use and benefit, appointed him their attorney to demand, sue for and receive from all persons whatsoever all debts, goods and effects owing or belonging to the partnership, and upon the receipt of the same to execute releases and discharges therefor as fully and effectually as the defendants might do if personally present; and the defendants also covenanted not themselves to receive, release, acquit or discharge any of the debts or demands due to the partnership, or interfere with, or presume in any manner to exercise any control of, the affairs of the partnership without Lamb's consent. The plaintiff never agreed to substitute Lamb as his debtor instead of the defendants.

Under these circumstances, the plaintiff's delivery to Lamb of a portion of the property pledged, on receiving payment of a sum which was, so far as was known to the plaintiff or appeared by his invoice of the goods pledged, (though not in fact,) a proportional part of his debt, was not such a dealing with or disposition of his collateral security, as to make him liable to account with the defendants for any greater sum than that so received by him from Lamb.

But by the plaintiff's subsequent sale by auction and purchase of the rest of the goods pledged, his debt was paid and discharged to the extent of the sum bid by him and stated in his account afterwards rendered to the defendants. The bal-

ance of his debt, after deducting this sum, he is entitled tc recover in this action.

*Judgment for the plaintiff accordingly.*